IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOHN NOONE,

    Plaintiff,

vs.                              CASE NO. 1:18-cv-55-AW-GRJ

ANDREW SAUL,[1]
Commissioner of
Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security Disability Insurance Benefits ("SSDI"). ECF No. 1. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 11, 15, 16. For the reasons discussed below, it is respectfully recommended that the Commissioner's decision be affirmed.

---

[1] Nancy Berryhill was the acting Commissioner at the time of filing. She has since been replaced by Andrew Saul. Therefore, the clerk should change the name of the defendant. Because Andrew Saul has been confirmed by the Senate, his proper title is "Commissioner" rather than "Acting Commissioner."

1

## I. PROCEDURAL HISTORY

Plaintiff's August 13, 2013, application alleged disability beginning in August 1996, and his date last insured ("DLI") for purposes of SSDI was December 31, 1998.  R. 111, 252-53.  His application was denied initially and upon reconsideration.  R. 110, 118, 140-50.  Following a hearing, administrative law judge ("ALJ") Bernard Porter issued an unfavorable decision, R. 74-104, 121-28, but the Appeals Council vacated that decision and remanded the case for a new hearing. R.133-35,187. Following the new hearing, ALJ Porter issued another unfavorable decision, R. 12-24, which the Appeals Council declined to review. R. 1-3. Plaintiff then filed the instant appeal.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2019). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d

580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2019).[2] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. § 404.1520(d). Fourth, considering a claimant's residual functional capacity ("RFC"), if a claimant's impairments do not prevent him

---

[2] All further references to 20 C.F.R. will be to the 2019 version, unless otherwise specified.

from doing past relevant work, he is not disabled. §§ 404.1520(e)-(f). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[3]

### III. SUMMARY OF THE RECORD

#### A. *ALJ's Decision*

The ALJ found that Plaintiff had the severe impairment of lumbar disc disease, but he did not have an impairment or combination of impairments that meets or equals the listings. The ALJ determined that Plaintiff has the

---

[3] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations. *Id.* (internal citations omitted).

RFC for a reduced range of sedentary work, due to his need for a sit-stand option with the ability to change position every 30 minutes, and with additional exertional, postural, and environmental limitations. R. 17-18. The ALJ concluded that Plaintiff's subjective complaints regarding the limiting effects of his impairments were not entirely credible, in view of the objective medical and opinion evidence and Plaintiff's own statements about his functional abilities and activities of daily living. R. 18-22. To support this finding, the ALJ extensively discussed the relevant medical evidence, with particular focus on the assessments of Plaintiff's treating physicians. *Id*.

Plaintiff had past relevant work as a roofer, classified as a heavy, skilled occupation as performed, and he was 39 years old as of his DLI. The ALJ determined that Plaintiff was unable to return to his past relevant work. Based upon the testimony of a VE, the ALJ determined that in view of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as addresser, document preparer, and telephone quotation clerk. The ALJ therefore found that Plaintiff was not disabled. R. 23-24.

**B. *Medical and Opinion Evidence***

The medical evidence relevant to Plaintiff's severe impairment of lumbar disc disease, from the date of alleged onset through his DIL, is summarized as follows.

Plaintiff injured his back in August 1996 while working on a roof.  R. 19, 1409.  Dr. Zerwald at Grand View Hospital examined Plaintiff on August 13, 1996, and issued a "return to work" form indicating that Plaintiff was capable of modified work duties except for lifting/carrying an unspecified amount of weight.  R. 1427.

Plaintiff's orthopedist, Dr. Richard Goldberg, opined in October 1996 that Plaintiff needed to undergo physical therapy to strengthen his back and that he could continue working, as long as he avoided any "significant heavy lifting or extension type activities."  R. 1410.

In January 1997, Dr. Susan Hemley, a neurological surgeon, evaluated Plaintiff and noted that he continued to work and continued to go up on roofs, but he did not perform any other physical aspects of his job. R. 1479. His physical examination revealed that he could toe-and-heel walk with normal strength, movement of the back was not limited, and straight leg raising was negative bilaterally.  There was pain to palpation in the left and right paralumbar regions, greater on the left, and pain to palpation of

the left sciatic notch. Strength was 5/5 on bedside testing; deep tendon reflexes were 2+ and symmetric. Sensation was grossly intact to pinprick and light touch. Plaintiff's lumbar MRI revealed degeneration and extrusion of the L5-S1 disc. Because Plaintiff continued to experience pain, Dr. Hemley performed an L5/S1 laminotomy, discectomy, and left S1 foraminotomy. R. 1474.

In March 1997, Dr. Susan Freedman, D.O, examined Plaintiff upon referral from Dr. Hemley. Plaintiff reported that he could tolerate all positions, provided he could change position. Dr. Freedman noted that Plaintiff had been restricted to lifting no more than 10 pounds and should avoid repetitive bending. Plaintiff was actively seeking employment at a less strenuous level than roofing. Dr. Freedman's diagnostic impression was: 1. Left S1 radiculopathy; 2. Rule/out bony fragment in the spinal canal; and 3. Pseudomeningocele status post-surgery and chiropractic manipulation. Dr. Freedman opined that Plaintiff was a good candidate for vocational rehabilitation, and that he could perform a sedentary job if he had the opportunity to change position as needed. R. 1463-66.

In April 1997, Plaintiff was examined by Dr. Brian Holmes, a neurosurgeon, for complaints of pain. Plaintiff reported that his pain had improved after surgery but then he developed headache and neck pain,

which he attributed to sleeping in an awkward position. At the time of the examination, Plaintiff was working part-time as a cashier at a gas station. R. 1459-60. Due to postoperative pseudomeningocele, Dr. Holmes performed insertion of a lumbar subarachnoid drain, L5 laminectomy, and repair of a preexisting dural tear and resection of pseudomeningocele membrane. R. 1454-55.

On June 4, 1997, Plaintiff was evaluated for physical therapy and was instructed to undergo therapy three times a week for two weeks. In July 1997, Plaintiff was discontinued from physical therapy due to noncompliance, having attended just two sessions. R. 1451-53.

An MRI in July 1997 revealed no evidence of fluid collection or recurrent disc herniation. R. 1450. On examination, Plaintiff had a normal gait and negative straight leg raising test. R. 1447.

In October 1997, Plaintiff reported to a pain clinic physician, Dr. Rene Rigal, that he was working "mainly in a sedentary capacity three nights a week as a cashier in a gas station." Plaintiff complained of leg and back pain as well as chronic left testis pain. On examination, Plaintiff had some low back pain "but not severe" and no tenderness on deep palpation to the lumbar facets. R. 1441-42. Dr. Rigal performed several spinal injections in October and November 1997 for pain control. R. 1436-1439. On October

15, 1997, Dr. Rigal reported that the injections on that date resulted in "complete eradication of his axial low back pain." R. 1439.  Later that month, Plaintiff experienced no relief from the procedure and Dr. Rigal posited that Plaintiff might be experiencing pain secondary to epidural fibrosis, which might warrant consideration of a spinal cord stimulator.  R. 1487.  At a November 1997 visit, Dr. Rigal was unable to "find a pain generator that totally explains his pain."  R. 1435.

In January 1998, Plaintiff reported that oral medication controlled his pain to levels between 5-6, with ten being maximum pain.  R. 1528. Dr. Rigal noted that "the use of narcotics has resulted in functional restoration."  R. 1529.  Throughout 1998, Dr. Rigal treated Plaintiff with oral medication and in October 1998 noted that his pain had decreased considerably, though not totally, and provided him "significant functional restoration within his limits of functionality.  R. 1512.  An examination performed by Dr. Rodwan Rajjoub in October 1998 revealed that Plaintiff had a negative straight leg raising test, steady gait, no motor weakness, and normal sensation.  R. 1509.

In a letter to Plaintiff's workers compensation carrier, Dr. Rigal requested authorization for the placement of an intrathecal narcotic pump (morphine pump) in late October 1998.  Dr. Rigal noted that Plaintiff was on

a stable dose of pain medication, and that a neuroaxial narcotic trial would be performed to ensure that Plaintiff experienced decreased pain while being challenged with physical therapy maneuvers.  R. 1506-07.

In November 1998, Plaintiff underwent a trial to establish his suitability for placement of a morphine pump.  R. 1498-99. During the trial, Plaintiff's pain was decreased and he was able to perform "challenging physical therapy which emulated his activities of daily life as well as some expected physical activities."  *Id*.  Plaintiff was determined to be a good candidate for pain pump placement and in December 1998 underwent placement of an intrathecal narcotic pump.  R. 1487-98. The surgery was uncomplicated and a follow up exam in January 1999 reflected that his pain had decreased substantially.  R. 1561.

### C. Hearing Testimony

Plaintiff's hearing was conducted on March 6, 2017.  R. 34.  Plaintiff testified that he continued working for approximately 10 months following his August 1996 injury.  R. 42.  Neither of his back surgeries alleviated his pain, nor was he helped by physical therapy or use of a TENS unit.  He did experience relief from Oxycontin.  When asked what activities he was able to do during that time, Plaintiff responded "Nothing.  I was crawling around at that time."  He testified that while the Oxycontin relieved his pain, it also

"knocked [him] out." A typical day involved sleeping and laying on the couch. The narcotics pump significantly reduced his pain, but he experienced side effects from the medication including constipation, drowsiness, and memory problems. Plaintiff clarified that he had to double his dose of Oxycontin in order to obtain relief. R. 43-47.

Plaintiff testified that during the relevant time period he could sit for no more than 15 minutes, stand for only seconds, and could walk only about 15 feet. He could not lift or carry anything. He testified that he only left the house for doctors' appointments. He did not drive until he received the narcotic pump. R. 51-52.

Plaintiff testified that he has difficulty showering and dressing and requires his wife's assistance. He cannot handle money due to memory loss. Plaintiff testified that he continued receiving workers' compensation benefits until a year and a half or two years prior to the hearing. He did not apply for SSDI before 2013 because he was receiving workers' compensation benefits. Plaintiff returned to light duty at the roofing company following his injury, but only until his first surgery. He worked at a friend's gas station following his injury, but only for about 2 weeks. R. 56-59.

The ALJ posed a hypothetical to the VE that assumed an individual limited to less than a full range of sedentary work with additional restrictions. The VE testified that such an individual could not return to Plaintiff's past work as a roofer but could perform other work at the sedentary exertional level such as addresser, document preparer, and telephone quotation clerk. Those jobs could also be performed if the person required a sit-stand option. R. 66-67.

## IV. DISCUSSION

Plaintiff argues that the ALJ's RFC finding is "absurd" because just prior to his DLI Plaintiff underwent placement of a pain pump, after failing all prior medical and surgical interventions. ECF No. 15 at 17. Plaintiff also contends that the ALJ erred in assessing his subjective complaints because the objective medical evidence "clearly supports [Plaintiff's] subjective testimony regarding his chronic debilitating pain." *Id.* at 19. For the sake of clarity, the Court will first address Plaintiff's argument regarding the ALJ's assessment of his subjective complaints.

### A. Substantial Evidence Supports the ALJ's Assessment

To establish disability on the basis of subjective complaints, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms

13

or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1520(c); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("Dyer failed to set forth the requisite objective medical evidence that confirmed the severity of the alleged pain . . . or that the objectively determined medical conditions are of such a severity that they can be reasonably expected to give rise to the alleged pain."); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 404.1521; *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

The ALJ assessed Plaintiff's subjective complaints consistent with the framework established under Social Security Regulation ("SSR") 16-3p. *See* R. 24.  As the Eleventh Circuit has explained:

> SSR 16-3p rescinded a previous Social Security ruling that concerned the credibility of a claimant. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility" from its sub-regulatory policy because the Social Security Administration's (SSA) regulations did not use the term. *Id.* SSR 16-3p clarified that "subjective symptom evaluation is not an examination of an individual's character" and that a two-step evaluation process must be used. *Id.* Step one is to determine whether the individual has a medically

14

determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* at 49,463-64. Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. *Id.* at 49,464-66. The Commission stated:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . with a title XVI disability claim.

*Id.* at 49,463.  *Contreras-Zambrano v. Social Sec. Adm.*, 724 Fed.Appx. 700, 702-03 (11th Cir. 2018).[4]

In this case, the ALJ thoroughly discussed Plaintiff's medical records for the relevant period as well as Plaintiff's own statements.  The ALJ noted that Plaintiff continued to work at his job for approximately 10 months.  In

---

[4] In October 2017, the SSA republished SSR 16-3p, clarifying that it was applicable beginning on March 28, 2016. *Id.* at 49,462, 49,468. The republished version noted that the SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that the SSA expected federal courts to use the version of the rule that was in effect at the time the SSA issued the decision under review. *Id.* at 49,468 n.27. The republished version further noted that the regulations regarding the evaluation of symptoms were unchanged.  The decision under review in this case was made on April 3, 2017, and therefore SSR 16-3p is applicable. *See Contreras-Zambrano*, 724 Fed.Appx. at 702-03.

October 1996, Dr. Goldberg referred Plaintiff to physical therapy and opined that he could continue working as long as he avoided heavy lifting or extension. In January 1997, Dr. Hemley restricted Plaintiff to lifting no more than 10 pounds, no repetitive bending, and changing positions as often as necessary. In January 1998, Dr. Rigal opined that Plaintiff's medication resulted in functional restoration. R. 21.

The ALJ also pointed to the minimal objective findings of disabling limitations during the relevant period, noting that Plaintiff's treating physicians, including Dr. Freedman, Dr. Goldberg, Dr. Hemley, and Dr. Zerwald, consistently opined that Plaintiff was capable of performing sedentary work. In particular, Dr. Freedman opined that Plaintiff was a good candidate for vocational rehabilitation. Plaintiff was referred for physical therapy by Dr. Goldberg to strengthen his back, but he was discharged due to noncompliance. Examination findings during the relevant time reflect that Plaintiff was able to ambulate normally without an assistive device and demonstrated minimal objective limitations. R. 21-22.

The ALJ concluded that while Plaintiff had some discomfort during the relevant period, he did not have the type of pain that would preclude work with the accommodations established in the RFC. The ALJ observed that Plaintiff "has not provided convincing details regarding factors that

16

precipitate the allegedly disabling symptoms," and that neither the severity of his impairment nor the extent of his limitations are supported by the objective medical evidence of record." R. 22.

The ALJ accurately characterized the objective medical evidence, which amply supports his findings regarding Plaintiff's subjective complaints. Plaintiff's testimony in which he described almost complete inability to function is at odds with the contemporaneous medical records documenting his limitations during the relevant time period, 20 years prior to Plaintiff's hearing testimony.

On this record, the Court concludes that the ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence and should be affirmed.

***B. The ALJ's RFC is Supported by Substantial Evidence.***

Plaintiff conclusionally alleges that the ALJ's determination of his RFC is "absurd" considering that just prior to Plaintiff's DLI he underwent surgery to place an intrathecal narcotic pump to control his chronic pain. ECF No. 15 at 17. Plaintiff does not explain how the ALJ's RFC fails to account for the functional limitations that are documented in Plaintiff's medical records.

A claimant's RFC is the most a claimant can do, despite his limitations. 20 C.F.R. § 416.945(a)(1). The RFC is based, not only on medical opinions, but also the ALJ's review of all relevant evidence in the record. *Id.*; 20 C.F.R. § 416.946.

As noted above, the ALJ thoroughly discussed the objective medical evidence that supported his RFC determination as well as Plaintiff's testimony about his limitations. *See Dyer v. Barnhart*, 395 F.3d 1206, 12111 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole."). A lack of medical reports indicating exertional limitations suggests that a claimant's impairments may not be as limiting as alleged. *See Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) (finding that substantial evidence supported the ALJ's conclusion that plaintiff's impairments were not severe because there were no reports indicating exertional limitations).

As the ALJ explained, multiple treating physicians opined that Plaintiff was capable of sustaining work at the sedentary exertional level, with accommodations such as being able to change position. Plaintiff asserts

that the pain pump was necessary due to other treatments not providing sufficient pain relief. But at the time that Plaintiff's pain pump was tested in November 1998, his pain was decreased and he was able to perform "challenging physical therapy which emulated his activities of daily life as well as some expected physical activities." R. 1498-99. A follow up exam in January 1999 reflected that his pain had decreased substantially. R. 1561.

Plaintiff points to nothing in the record that undermines the ALJ's finding that he retained the RFC for sedentary work, with accommodations, as of his DLI, notwithstanding the placement of the pain pump. On this record, the Court concludes that the ALJ's RFC determination is supported by substantial evidence and should be affirmed.

## V. RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, this 22nd day of August 2019.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.